Case 7:14-cv-00506 Document 48 Filed in TXSD on 05/06/16 Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
May 06, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| MARK DIZDAR, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 7:14-CV-506 |
| § | |
| STATE FARM LLOYDS, *et al*, § | |
| § | |
| Defendants. § | |

## OPINION AND ORDER

There are multiple filings currently pending before the Court, which include: (1) a motion for leave to file the first amended answer filed by State Farm Lloyds ("State Farm") and Richard Lee Wallis ("Mr. Wallis") (collectively "Defendants")[1]; (2) a motion for leave to file the first amended complaint filed by Mark Dizdar ("Mr. Dizdar") and Kelly Dizdar ("Mrs. Dizdar"), d/b/a Dizdar Development, Ltd. ("D.D.L") and Penta Valley Rentals, LLC ("P.V.R") (collectively "Plaintiffs")[2]; and (3) the motion for summary judgment filed by Defendants.[3]

Plaintiffs timely responded to the motion for summary judgment[4] and Defendants replied.[5] Defendants also filed a motion to strike Plaintiff's summary judgment evidence.[6] Given the interrelated nature of the motions and common issues involved in their disposition, the Court will consider them concurrently. After considering the motions, response, the record, and relevant authorities, the Court **GRANTS** Defendants' motion for summary judgment.

---

[1] Dkt. No. 30 ("Motion for Leave to File Amended Answer").
[2] Dkt. No. 31 ("Motion for Leave to File Amended Complaint").
[3] Dkt. No. 35 ("Motion for Summary Judgment").
[4] Dkt. No. 36 ("Response").
[5] Dkt. No. 38 ("Reply").
[6] Dkt. No. 39 ("Objections").

Accordingly, the Court **DENIES** the motion for leave to file an amended answer and the motion for leave to file an amended complaint.

## I. Background

Plaintiffs' claims arise from damage sustained to their property as a result of a March 29, 2012 storm event in the Rio Grande Valley.[7] Plaintiffs insured their property with State Farm pursuant to a dwelling policy providing replacement cost benefits ("Policy").[8] Shortly after the storm, Plaintiffs reported an insurance claim to State Farm for the damages sustained to their property.[9] Thereafter, Mr. Wallis inspected the property on behalf of State Farm on June 23, 2012,[10] estimating the loss to the property to be $7,469.55.[11] Consequently, State Farm issued to Plaintiffs an actual cash value payment of $3,320.80, after applying depreciation and deductible.[12] State Farm also advised Plaintiffs that the additional amount available to them as "replacement cost benefits (recoverable depreciation)" would be $3,308.75, and explained the requirements Plaintiffs needed to fulfill to receive the replacement cost benefits.[13]

In July 2012, State Farm received an estimate from Plaintiffs' contractor, S&D Custom Construction, totaling $24,231.18.[14] On or about August 17, 2012, Mr. Wallis re-inspected Plaintiffs' property on behalf of State Farm along with Cord Largo, a representative from S&D Custom Construction.[15] Mr. Wallis and Mr. Largo "ultimately agreed to State Farm's original scope of repairs,"[16] and Mr. Wallis further agreed to "update the pricing in the estimate and to release the recoverable depreciation based on a signed contract between [Plaintiffs] and S&D

---

[7] Dkt. No. 1, Exh. B at pp. 4-25 ("Petition").
[8] Motion for Summary Judgment, Exh. A ("Policy").
[9] Motion for Summary Judgment, Exh. B ("Autry Affidavit") at ¶ 4.
[10] *Id.* at ¶ 5.
[11] *Id.*
[12] *Id*; Tab B-2.
[13] Autry Affidavit, Tab B-2 at p. 4.
[14] *Id.* at ¶ 6.
[15] *Id.*
[16] *Id.*

Custom Construction."[17] Thus, Defendants state that Mr. Wallis and Mr. Largo, on behalf of Plaintiffs, "agreed to the amount of loss."[18] Subsequent to this inspection, State Farm issued a supplemental payment of $3,310.56, the recoverable depreciation, for Plaintiffs' storm claim.[19] This figure included a price adjustment of $1.81 to the earlier recoverable depreciation estimate ($3,308.75).[20] After payment was issued, State Farm had no "further contact or communications" with Plaintiffs regarding their claim until this suit was filed in April 2014.[21]

On April 17, 2014, Plaintiffs sold the Property "as is" for $80,000.[22] Two days later, on April 19, 2014, Plaintiffs filed the instant lawsuit in state court alleging various insurance related causes of action against Defendants.[23] Subsequently, on June 19, 2014, Defendants removed the case to this Court.[24] After the Court granted Plaintiffs' motion to withdraw their motion to remand and dismissed then-defendant Richard Freymann,[25] the Court abated the case on September 17, 2014 for sixty days to allow Plaintiffs to provide State Farm proper notice pursuant to Texas Insurance Code § 541.154.[26] The Court lifted abatement on May 13, 2015.[27] The parties thereafter filed the motions now before the Court.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[17] *Id.*; Autry Affidavit, Tab B-4.
[18] Autry Affidavit at ¶ 10; Motion for Summary Judgment at ¶ 4.
[19] Autry Affidavit at ¶¶ 7-8.
[20] Autry Affidavit, Tab B-6.
[21] Autry Affidavit at ¶ 9.
[22] Response at ¶ 13.
[23] *See* Petition.
[24] Dkt. No. 1.
[25] Dkt. No. 9.
[26] Dkt. No. 10.
[27] Dkt. No. 18.

law."[28] A fact is "material" if its resolution could affect the outcome of the action,[29] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[30] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[31]

In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[32] In this showing, "bald assertions of ultimate fact" are insufficient.[33] Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[34] On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[35] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[36] This demonstration must specifically indicate facts and their significance,[37] and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[38]

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[39] Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence

---

[28] FED. R. CIV. P. 56(a).
[29] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)(internal quotation marks and citation omitted).
[30] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)(citation omitted).
[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[32] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[33] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978)(citation omitted).
[34] *See Celotex Corp.*, 477 U.S. at 323.
[35] *See id.* at 323-25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995).
[36] *See id.*
[37] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[38] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008)(citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[39] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)(citations omitted).

to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[40] Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[41] Parties may cite to any part of the record, or bring evidence in the motion and response.[42] By either method, parties need not proffer evidence in a form admissible at trial,[43] but must proffer evidence substantively admissible at trial.[44] However, allegations set out in pleadings are not evidence.[45]

Finally, because federal jurisdiction is invoked on the basis of diversity of citizenship,[46] this Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[47] Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[48]

> i. *Summary Judgment Evidence and Objections*

Defendants have proffered a copy of the Policy at issue,[49] and both parties submit portions of the claim file State Farm maintained on Plaintiffs.[50] Defendants also attaches the

---

[40] *See id*.
[41] *See* FED.R.CIV. P. 56(e).
[42] *See* FED. R. CIV. P. 56(c).
[43] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[44] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012)("the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").
[45] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047(5th Cir.1996)("[P]leadings are not summary judgment evidence.")
[46] Dkt. No. 1 at ¶ 9.
[47] *See Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[48] *Id*. (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940))(internal quotation marks omitted).
[49] Motion for Summary Judgment, Exh. A ("Policy").
[50] Motion for Summary Judgment, Exh. B, Tab B-1; Response, Exh. A.

affidavit of team manager Darren Autry ("Autry"), along with its supporting attachments.[51] In support of their position, Plaintiffs submit an affidavit from Mr. Dizdar,[52] 2014 appraisal information for the property from the Hidalgo County Appraisal District ("HCAD"),[53] and the transcript from the oral and videotaped deposition of Mr. Dizdar.[54] Plaintiffs also include the original estimate from their contractor, S&D Custom Construction.[55]

State Farm objects to the Dizdar affidavit and S&D Custom Construction estimate.[56] First, State Farm objects to Mr. Dizdar's affidavit on the basis that it is "wrought with conclusory statements which lack factual support and go far beyond Mr. Dizdar's personal knowledge."[57] State Farm also points out a "more grave concern" in that "several statements" in Mr. Dizdar's affidavit directly contradict his deposition testimony.[58] State Farm objects to the entirety of Mr. Dizdar's affidavit arguing it is a sham affidavit.[59] Second, State Farm objects to the S&D Custom Construction estimate claiming it is "unproven hearsay from a non-designated expert."[60] The Court finds it unnecessary to rule to on these objections because even if considered in their entirety, neither the affidavit, nor the estimate from S&D Custom Construction, raises a genuine issue of material fact. However, the Court is concerned regarding conflicts in Mr. Dizdar's affidavit (dated January 18, 2016) when contrasted to his deposition testimony (conducted December 11, 2015).

---

[51] Motion for Summary Judgment, Exh. B ("Autry Affidavit").
[52] Response, Exh. B ("Mark Dizdar Affidavit").
[53] Response, Exh. C ("HCAD Property Appraisal Information 2014").
[54] Response, Exh. D ("Mark Dizdar Deposition").
[55] *See* Response, Exh. A at pp. 18-27.
[56] *See* Objections.
[57] Objections at ¶ 1.
[58] *Id.*
[59] *Id.* at ¶ 9.
[60] *Id.* at ¶ 10.

For example, in his affidavit Mr. Dizdar avers that the property "sustained extensive damage during the storm."[61] He claims there is damage to the interior of the property (to the ceilings, walls, insulation, and flooring) as well as to the exterior (to the windows, doors, fence and air conditioning unit).[62] However, this affidavit contradicts his earlier deposition testimony, when he states "I don't know" in response to Defendants' questions on whether he was aware of the factual bases or evidence to support these allegations.[63] There are several other instances where Mr. Dizdar contradicts himself:

1. In his affidavit, Mr. Dizdar avers that after Mr. Wallis performed an inspection of the property Mr. Dizdar consulted with and hired a representative from S&D Custom Construction.[64] Yet, in his deposition, he could not remember whether a representative did work for him and performed any repairs or services, nor could he even remember the name of the contracting company.[65]

2. In his affidavit, Mr. Dizdar avers that during the June 23, 2012 inspection, Mr. Wallis "did not allow sufficient funds to make reasonable repairs to the Property" and details why the State Farm estimate was insufficient.[66] However, in his deposition testimony, he states he has no recollection of the State Farm estimates.[67] Furthermore, he states that while he knew State Farm inspected the property, he could not remember whether he was present for the inspection, or whether there was even someone else on his behalf at the inspection, or how long the State Farm adjuster was on the property.[68]

3. In his affidavit, Mr. Dizdar asserts that S&D Custom Construction and State Farm re-inspected the property on or about August 17, 2012 at his request.[69] However, he testified that he was not aware of a meeting on the property in August 2012.[70]

While the Court will not rule on Defendant's objections, the contradictions between Mr. Dizdar's affidavit and deposition testimony on factual matters cause the Court much concern.

---

[61] Mark Dizdar Affidavit at p. 1.
[62] *Id.*
[63] Mark Dizdar Deposition at p. 65:3-13; *see also* p. 26:5-15 (concerning exterior damage to the property, Dizdar states "I don't remember specifically.").
[64] Mark Dizdar Affidavit at p. 2.
[65] Mark Dizdar Deposition at p. 38:1-22.
[66] Mark Dizdar Affidavit at p. 2.
[67] Mark Dizdar Deposition at p. 57:1-9.
[68] *Id.* at p. 57:10-24.
[69] Mark Dizdar Affidavit at p. 2.
[70] Mark Dizdar Deposition at p. 60:9-12.

The Court's misgivings are further heighted upon scrutiny of Mr. Dizdar's affidavit. Mr. Dizdar's affidavit wholly fails to establish the foundation for his statements in the affidavit. Mr. Dizdar does not explain how he has come to possess personal knowledge of the alleged facts within the affidavit. Despite the fact Mr. Dizdar fails to establish how he has first-hand knowledge of the alleged damages to his property, his affidavit proceeds to detail the alleged damages.[71]

On this point, the Court reminds Plaintiff's counsel of this principle: "An affidavit or declaration used to support or oppose a motion must be made on *personal knowledge* . . . ."[72] The Court is compelled to remind Plaintiff's counsel that "when the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, [the Fifth Circuit] require[s] an explanation of that conflict."[73]

### III. Motion for Summary Judgment

Defendants move for summary judgment, arguing that Plaintiffs' breach of contract claim fails as a matter of law because State Farm paid Plaintiffs according to their Policy and because Plaintiffs "made no claim under the Policy that State Farm did not pay."[74] Defendants maintain that Plaintiffs "have not adduced any evidence to demonstrate that they are owed for any covered damages" beyond that which has been paid by State Farm already.[75]

---

[71] This is contrast to deposition testimony where he is unable to specify exterior damage to the property. *See* Mark Dizdar Deposition at p. 26:5-15 (concerning damage to the outside of the property, Dizdar states "I don't remember specifically.").
[72] Fed. R. Civ. P. 56 (c)(4) (emphasis added).
[73] *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002)(citing *S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 495 (5th Cir.1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.")).
[74] Motion for Summary Judgment at ¶ 1.
[75] *Id.* at ¶ 9.

Defendants also move for summary judgment on Plaintiffs' extra-contractual claims, arguing "Plaintiffs cannot adduce any evidence supporting their claims for extra-contractual damages" and furthermore, that "[a]bsent a valid breach of contract claim, Plaintiffs cannot meet the requirements to create an issue of fact on their extra-contractual causes of action."[76] Plaintiffs' petition alleges Defendants committed fraud, conspired to commit fraud, breached the common law duty of good faith and fair dealing and violated Texas Insurance Code Chapters 541 and 542.[77] Defendants' arguments in favor of summary judgment proceed sequentially to address the claim for breach of contract before the extra-contractual claims, a rubric which the Court finds helpful.

### a. Breach of Contract

At issue in the pending motion for summary judgment is whether the evidence raises any issue of material fact that State Farm breached the Policy with Plaintiffs. Plaintiffs claim State Farm breached the insurance contract by failing to pay "Plaintiffs' full and entire claim" such that they "were unable to repair all of the storm damages to the property and, ultimately, forced to sell the insured property for a significantly lower price . . . ."[78] State Farm on the other hand maintains Plaintiffs' claim was paid on a replacement cost basis pursuant to the Policy, which states:

> **SECTION I - CONDITIONS**
> * * *
> **3. Loss Settlement.** Covered property losses are settled as follows:
> * * *
> c. Buildings under Coverage A at replacement cost without deduction for depreciation, subject to the following:
> * * *
> (2) We will pay the cost of repair or replacement, without deduction for depreciation, *but not exceeding the smallest of the following amounts:*

---

[76] *Id.* at ¶ 10.
[77] *See* Petition.
[78] Response at ¶ 3.

> (a) the limit of liability under this policy applying to the building;
>
> (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or
>
> (c) the amount actually and necessarily spent to repair or replace the damaged building.
>
> (3) We will pay the actual cash value of the damage to the buildings, up to the policy limit, *until actual repair or replacement is completed.*
>
> (4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then *make claim within 180 days after loss for any additional liability on a replacement cost basis*.[79]

State Farm argues that "[a]t no time after State Farm issued the second payment in August 2012, did Plaintiffs indicate to State Farm that they disagreed with the amount of loss determined by State Farm or that there was any damage they were claiming that was not included in the amounts paid by State Farm."[80] State Farm further argues that Plaintiffs "agreed with State Farm on the repairs identified in Start Farm's estimate,"[81] specifically noting that during and after the second inspection, "[Plaintiffs] did not indicate to State Farm that they disagreed with the amount of loss determined by State Farm . . . Rather, the claim file notes reflect that the contractor Cord Largo, on behalf of the Dizdars, and [State Farm's representative, Mr. Wallis] agreed to the amount of loss and State Farm paid the agreed amount."[82] In his deposition testimony, Mr. Dizdar confirmed that S&D Custom Construction was authorized to negotiate the claim with State Farm on behalf of Plaintiffs.[83]

---

[79] Policy at 0017-18 (emphases added).
[80] Motion for Summary Judgment at ¶ 6.
[81] *Id.* at ¶ 13.
[82] Autry Affidavit at ¶ 10.
[83] Mark Dizdar Deposition at 59:18-60:8 ("[S&D Custom Construction] was authorized to negotiate a settlement with State Farm").

In Texas, insurance policies are controlled by Texas rules of contract construction.[84] The elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."[85] In Texas, the party claiming breach of contract has the burden of proof.[86]

Here, the first element of a breach of contract claim is satisfied as the parties do not dispute that they entered into a valid contract. The central issue is whether Plaintiffs performed or tendered performance. The Policy between the parties states "[State Farm] will pay the actual cash value of the damage to the buildings, up to the policy limit, *until actual repair or replacement is complete.*"[87] The Policy explains how State Farm will calculate the cost of repair or replacement, noting this amount will not exceed the smallest of the following amounts:

> (a) the limit of liability under this policy applying to the building;
>
> (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or
>
> (c) the amount actually and necessarily spent to repair or replace the damaged building.[88]

As an alternative, the Policy provides that Plaintiffs could "disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings *on an*

---

[84] *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987)).
[85] *Smith Int'l, Inc. v. Egle Group, LLC,* 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, LLC,* 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, rehearing overruled)).
[86] *W.G. Pettigrew Distrib. Co. v. Borden, Inc.*, 976 F. Supp. 1043, 1057 (S.D. Tex. 1996), *aff'd sub nom. W.G. Pettigrew Co. v. Borden, Inc.*, 127 F.3d 34 (5th Cir. 1997) (granting summary judgment to defendant because plaintiffs, who had the burden of proof, failed to establish essential elements of breach of contract).
[87] Policy at 0018 (emphasis added).
[88] *Id.*

*actual cash value basis* and then *make claim within 180 days after loss for any additional liability on a replacement cost basis*.[89]

The undisputed evidence is that State Farm settled Plaintiffs' claims very soon after they were made in accordance with the Policy's replacement loss provision, for a total amount of $6,631.36.[90] While Plaintiffs insist that the payment was insufficient, the Policy here does provide that Plaintiffs would receive only actual cash value until repair or replacement was complete. Alternatively, to receive any additional payments on a replacement cost basis, Plaintiffs could have made a claim on an actual cash value basis and then, subsequently made a claim within 180 days after the loss for any additional liability on a replacement cost basis. The claim file attached to State Farm's motion for summary judgment indicates clearly that State Farm received no additional claims from Plaintiffs after the second payment was issued in August 2012.[91] The claim file also shows that State Farm re-advised Plaintiffs that to receive replacement cost benefits, they had to:

> 1. Complete the actual repair or replacement of the damages part of the property.
>
> 2. Notify us of your intent to do so within 180 days of the loss.
>
> 3. Confirm completion of repair or replacement, by submitting invoices, receipts, or other documentation to your agent or claim office.
>
> * * *
>
> If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim representative prior to beginning repairs.[92]

Plaintiffs provide no evidence to show they completed repairs/replacements to the property, confirmed completion of repairs by submitting receipts, contacted State Farm about additional

---

[89] *Id.*
[90] Autry Affidavit at ¶ 8; Response, Exh. A.
[91] *See id.*
[92] Autry Affidavit, Tab B-2 at 0211.

liability, or the inability to make repairs pursuant to the repair/replacement cost estimates, as required by the Policy.

Autry's affidavit establishes that State Farm received no further notice from Plaintiffs until two years later when suit was filed in April 2014.[93] Plaintiffs provide no evidence to establish that notice was provided to State Farm of completed repairs or additional liability before filing this lawsuit. Mr. Dizdar states in his deposition testimony that he did not know if there were repairs made to his property, or if there was even a "contract for repairs entered into with any entity to perform repairs to the house . . . ."[94] Mr. Dizdar further admits that there were no further communications with State Farm following the second inspection on August 2012.[95] The record as a whole supports State Farm's contention that after the supplemental payment was made in August 2012, Plaintiffs had no further contact with State Farm until Plaintiffs filed the instant lawsuit. Thus, it is clear that Plaintiffs' failure to perform as required by the Policy defeats their breach of contract claim.

Plaintiffs appear to be alleging that State Farm has a general duty under the policy to pay for damaged property covered by the Policy even when Plaintiffs fail to notify State Farm of any additional damage. This unsupported argument is simply without merit. Plaintiffs failed to file a claim for the alleged damage to their property in contravention of the Policy. In short, the fact that Plaintiffs are dissatisfied with the damages paid is not the result of State Farm's failure to fulfill a Policy obligation; instead, it results from Plaintiffs' knowing failure to even submit a claim for damages to State Farm prior to filing this lawsuit. By way of Plaintiffs' original estimate from S&D Custom Construction,[96] the Court observes that Plaintiffs were not satisfied

---

[93] *Id.* at ¶ 9.
[94] Mark Dizdar Deposition at 43:2- 43:9.
[95] *Id.* at 83:24- 84:3.
[96] *See* Response, Exh. A at pp. 18-27.

with State Farm's initial inspection. If Plaintiffs remained unsatisfied with the results of the second inspection, they should have filed a supplemental claim by September 25, 2012, 180 days after the date of loss (March 29, 2012). Plaintiffs did not do so. In turn, because Plaintiffs have failed to raise a genuine issue of fact, Defendants' motion for summary judgment as to the breach of contract claim is **GRANTED**.

### b. *Extra-Contractual Claims*

Plaintiffs' original petition alleges extra-contractual claims against State Farm for (1) committing violations of Chapters 541 and 542 of the Texas Insurance Code; (2) engaging in fraud and conspiracy to commit fraud; and (3) breaching the common law duty of good faith and dealing.[97] Additionally, Plaintiffs allege extra-contractual claims against Mr. Wallis for committing violations of Chapter 541 of the Texas Insurance Code and engaging in fraud and conspiracy to commit fraud.[98] The Court commences its analysis of these claims by recognizing the principle that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract."[99] The exceptions to this rule are the insurer's (1) failure to timely investigate the insured's claim or (2) commission of "some act, so extreme, that would cause injury independent of the policy claim."[100]

Defendants argue Plaintiffs cannot maintain any extra-contractual causes of action because Plaintiff's breach of contract claim fails as a matter of law. Thus, Defendants contend that Plaintiffs cannot succeed on their extra-contractual claims because "[a]bsent a breach of contract claim, Plaintiffs' extra-contractual claims fail, as well."[101]

---

[97] *See* Petition.
[98] *Id*.
[99] *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994)).
[100] *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995).
[101] Motion for Summary Judgment at ¶ 1.

*i. Bad Faith Claims*

In Texas, the common-law bad faith standard for breach of the duty of good faith and fair dealing is imputed to statutory liability under the Texas Insurance Code; both extra-contractual claims share the same predicate for recovery, such that evidentiary insufficiency is equally dispositive.[102] Relevant to the disposition of this case, the Texas Supreme Court has held that an insured's bad faith claims must fail as a result of the Court's resolution of the breach of contract claim in the insurer's favor, unless the insured can demonstrate actions or omissions that caused an injury independent of those that would have resulted from the wrongful denial of the policy benefits.[103]

Plaintiffs' bad-faith causes of action relate solely to property damage that Plaintiffs failed to notify State Farm of before filing suit. To the extent Plaintiffs even sufficiently alleged extra-contractual claims in their original petition, the bad-faith causes of action relate solely to State Farm's investigation and handling of the claims they initially submitted in June 2012, and claims they failed to submit after. Thus, far from providing evidence creating a genuine issue of material fact on these claims, Plaintiffs have failed to even allege an action which would constitute an independent injury. Accordingly, the Court **GRANTS** summary judgment in Defendants' favor on Plaintiffs' common-law and statutory claims of bad faith.

*ii. Prompt Payment of Claims*

Similarly, Plaintiffs bring a claim under Chapter 542 of the Texas Insurance Code against State Farm for its alleged failure to timely pay Plaintiffs' claims. As noted earlier, the record

---

[102] *See Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied); *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, review denied) (citing *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922–23 (Tex. 2005) (per curiam)).
[103] *Great Am. Ins. Co. v. AFS/IBEX Fin. Services, Inc.*, 612 F.3d 800, 808 n.1 (5th Cir. 2010) (citing *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002)). *But see In re Deepwater Horizon*, 14-31321, 2015 WL 7421978, at *10 (5th Cir. Nov. 19, 2015), *certified question accepted* (Dec. 4, 2015) (certifying that question to the Texas Supreme Court).

reflects that State Farm promptly responded to, and paid Plaintiffs' initial claim. When Plaintiffs requested a re-inspection of the property, State Farm once again timely responded and paid the supplemental damages claim. Moreover, State Farm received no notice of Plaintiffs' displeasure with Defendants' management of the claim until the lawsuit was filed. Again, Plaintiffs failed to notify State Farm of their additional claims. Thus, because Plaintiffs have failed to even allege an action which would constitute an independent violation, the Court **GRANTS** summary judgment in State Farm's favor on this claim as well.

### iii. Fraud & Conspiracy

Lastly, Defendants pray that the Court dismiss Plaintiffs' fraud and conspiracy to commit fraud claims as they have not provided "evidence to create a fact issue concerning liability under these claims . . . ."[104] To the extent these allegations even properly state a claim, Defendants have sufficiently showed the absence of a genuine issue of material fact by proffering evidence of proper completion of the claims process and tendering of payment. In contrast, Plaintiffs have failed to offer evidence to the contrary, overlooking the fact they failed to give notice of additional claims to State Farm pursuant to the Policy. As a result, the Court **GRANTS** summary judgment in favor of Defendants as to Plaintiffs' fraud and conspiracy to commit fraud claims.

## IV. Holding

Due to State Farm's compliance with the Policy, there is no breach of contract. Plaintiffs failed to give notice and failed to file additional claims for property damage as required under their Policy. Furthermore, Plaintiffs' extra-contractual claims for breach of the duty of good faith and fair dealing, as well as statutory violations of the Texas Insurance Code, do not survive absent the breach of contract claim. Finally, Plaintiffs' fraud and conspiracy to commit fraud claims are fatally unsupported.

---

[104] Motion for Summary Judgment at ¶ 27.

Accordingly, the Court finds summary judgment as to all claims is warranted. For the foregoing reasons, the Court **GRANTS** the motion for summary judgment. Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. The Court **DENIES** the remaining motions as moot. Finally, the Court reserves the right to address Rule 11 issues at a later date.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 6th day of May, 2016.

_____
Micaela Alvarez
United States District Judge